Okay. This case, I understand we're submitting the attorney's fee appeal on the briefs. We appreciate that. Because of that, the panel agrees we don't need more than 15 minutes to sign. So, Mr. Podolak, we're going to proceed accordingly. We'll give you . . . how much time do you want for rebuttal? Are you sure? I was willing to offer 60 minutes on argument. I mean, we . . . no, you guys are good. Okay. I'm sure . . . Do you want five minutes? I would appreciate five minutes on rebuttal, Your Honor. You know, if you were in the Second Circuit, you would frequently find you get five or ten minutes a side. Yeah. Well, good morning, and may it please the Court. I'm Greg Podolak, and I represent the appellant, Kaufman Lynn, in this matter. I'm here today asking the Court to reverse a decision by the District Court that granted summary judgment in favor of liberty, and instead direct that a course of construction exclusion does not apply to Kaufman's work that had been put to its intended use. And . . . Can I ask you something sort of odd? It seems to me that maybe the way to look at this case procedurally, not substantively, is that you've got to take the count for reformation first, because if you resolve that reformation claim in favor of your clients on the merits, and you rework the scope of coverage with regards to the construction that was going to be done, right, then that's a different policy for the District Court to . . . or for us to evaluate in figuring out whether or not, you know, the terms project or completed are ambiguous or plain on their face or all of that. And it's just a reaction I had to the case as a whole, and whether or not you've got to do one before the other, and whether doing one before the other affects whether or not your client has standing to seek reformation. So, I would say I certainly think that that is one critical way of looking at the proceedings overall. I don't think it's necessary to achieve the same result. It certainly would have been instructive for the Court in evaluating the ultimate coverage issues, because as the record plainly reflected, the individual from Liberty who wrote the final description of the project conceded that she had never worked on underwriting a construction project before. This was her first time doing it. And she didn't understand why we . . . I tell you, my own view is that the District Court likely erred about standing regardless. Because I think the law is that where the contract does not reflect the real agreement, the writing does not reflect the real agreement, that you can obtain a reformation before there's an underlying dispute about a potential breach of the contract. And I think that has long been the law, and the District Court seemed to misunderstand the nature of reformation as a remedy, as requiring the injury of, say, a breach to kick in. In fact, there's lots of law that says that if you wait too long to reform the contract, an equitable remedy, that you may be guilty of laches, and it's all premised on the assumption that you can seek reformation before that later dispute arises. If that's true, then it seems to me the District Court has to be wrong about standing. I think it is true, Your Honor. And I don't know that I could articulate it any better than you just did. And that certainly . . . I didn't articulate it particularly well. I had to do a lot of research about this myself to make sure I understood the law of reformation. Well, I'm remiss then if they didn't, and certainly would be more than willing to supplement them if appropriate. But suffice it to say, Your Honor . . . In some of the cases, I think we probably found the same cases. Some of them speak, not necessarily in the older state cases, speak not necessarily in terms of standing, but ripeness, and when you can move forward on a reformation claim when there hasn't been an underlying suit on the policy or an underlying event. The District Court went off on standing. That was error, right? It wasn't a question of standing, was it? It wasn't a question that you had not sustained injury, or at least you had not sufficiently alleged a harm that could be redressed depending on whether or not the court rewrote the contract, reformed it, right? If I read the court's ultimate conclusion properly, I believe the court believed that we had not substantiated a harm that led to standing. Do you even have to wait? If you have a writing, and then you read the writing, and you say, Oh, gosh, this is mistaken, this is not our agreement, and you have a right claim for reformation, do you not under state law? Yes.  If I might, in the interest of the time that we have available, I would like to discuss also very pointedly, and I do think that issue resolves where we are today and identifies the need for reversal and to send this back to the District Court to clean that issue up. Onto the coverage issues on the substance and on the merits, there is just as fundamental a flaw in the court's ultimate conclusion about the key terms of this course of construction exclusion. To wit, the court misapplied the definition, the proper definition of completion as it's used in that exclusion. I think the important starting place for that discussion is the base form of this insurance policy contract. That's one of the things that the court, I think, did not spend ample time dissecting. That is, there is a 22-page document that is the foundation of this entire insurance policy. Of course, like many other contracts, there is a series of endorsements that add, supplement, delete, or clarify certain items. At the end of the day, that base form, that's the bedrock. That's where the story begins. That base form includes a definition of completion that has been in its present form. Let's start with the definition of the term project. I note with considerable interest that project is defined, it's used in the singular. We don't speak of projects, and every time I see the word project crop up in this agreement, it's in the singular. It doesn't say projects. We're talking about a singular entire construction project, at least if we give the ordinary reasoning or meaning that we would to that term. Shouldn't we review it that way and give it that meaning? Well, I would say, number one, it does refer to the concept of projects in general, so I'll refer to the course of construction exclusion. Not projects, project. Well, so it doesn't include an S at the end of the word project, but the course of construction exclusion that is the subject of this dispute provides that the insurance does not apply to any property damage at or to any project insured under this policy. So there's an implication that it applies to multiple projects, but Your Honor's point is well taken, that the implication would be that this exclusion is designed to refer to a singular project in its totality as opposed perhaps to phased components of a  But I think the challenge with that analysis is it, number one, gives too much credit to the definition, if you will, of project that's been used in the policy. If in fact Liberty had intended to be precise about the specific contours of this project and how it would be construed in the context of this exclusion, they would have provided with unmistakable clarity those parameters. Well, the reason I raise it is if you look further, if you looked at endorsement four, which added additional parties to the contract, and it still refers to the project, and then it says the same project. And then if you looked at endorsement 15, the course of construction exclusion is damaged to the project during the course of the instruction. And if you looked at endorsement number 26 to the contract, again, each and every time it refers to it in the singular. What am I to make of that? I think only, Your Honor, that in this context it certainly, and there's no dispute on our part that it refers to this singular project. I think the fundamental problem is that's looking at it in isolation. In this exclusion, it refers to completion of the project, and when the proper definition of completion is used, that which is provided in the definition section of the bedrock form of their policy, it says in no uncertain terms that completion means your work will be deemed completed at the earliest of the following times, and it provides three definitions that have been long cultivated over the course of 40 years to reflect the subtleties and complexities and nuances of construction work to identify when work is completed. Doesn't the product completed operations hazard, which is one of the places where this definition of completion comes from, doesn't that deal with the extension of coverage for certain periods at certain points in the policy? That's one facet of it, but that's not its only purpose. So it is not, just to clarify. Tell me where I find the, and then you can continue the answer, I'm sorry, but tell me where in the general part of the policy, not a specific endorsement or exclusion, I can find the definition of completion that you think is the one that should be used. You can find it in the products completed operations hazard definition, which is in the definition section of the policy. That's the only one? Correct. Okay. Got it. I thought there was another one. That's okay. I see that I've run out of time. Unless there are any pending questions, I will see the rest for my rebuttal. Thank you. Thank you. Thank you.     Good morning. May it please the court, Carol Rooney for the Apley Liberty Surplus Insurance Company. This is a very- This is supposed to be a CCIP policy, right? Correct, your honor. Through the, I don't mean guise in a bad way, but through the guise of a general commercial liability policy, right? Yes. It's written as a commercial general liability policy. It is a CGL policy, but it's a CCIP policy. Okay. You seem to have, and this may be perfectly legitimate, but if it's a CCIP based policy, which is supposed to protect the builder, not only, and all the layers of subcontractors below, not only for things that happen after completion, you seem to have written the builder's risk stuff out of this policy completely, if your reading of the policy is correct. Well, your honor, and we did make the point, this is not a builder's risk policy. I know, but builders don't usually take out commercial liability policies that cost $167,000 for injuries that are going to take place post-completion, because once the project gets completed, the builder's out, and the people who have liability are the owners who are moving into the building. Now, I'm not saying this is wrong, I'm not saying it's illegitimate, I'm not saying it's an echo, I just want to understand, you have, through this exclusion, you have written out all builder's risk insurance out of the contract, if you're right. The COC exclusion, yes, it excludes property damage during the course of construction until the project is completed. Right, so you've eliminated all builder's risk coverage in this case. This policy does, it excludes, yes, until the project is completed, but this is not an unusual type of policy, your honor, and I would also highlight... I didn't find a single case in the entire country with regard to this exclusion. Your honor, this is actually, it's a customized product for a specific customer. That's why you can't say it's common, it may be common in the industry, it's not common legally. No, it's... I couldn't find a single case, or for that matter, a single treatise on insurance that discussed it's operation, it's effect, it's scope, it's breadth, anything like that. Well, what it's meant to do, your honor, it basically, and it can be modified according to the customer's needs, and that's one of the points that we made, and just going back to what your honor was, in terms of whether or not this policy should be enforced, I would want to highlight, your honor, that Kaufman's interpretation of this policy is simply incorrect and it doesn't follow Florida law. Completed where they're going to the product's completed operation hazard, first you have to start at the very beginning of the policy that says, other words and phrases that appear in quotation marks have special meaning. So they go to product's completed operation hazard, which is in the definition section, it's not even a coverage, it's in quotations, that has special meaning. And then you go to where it says, your work, that's in quotation marks, that has special meaning. But they're trying to extrapolate, say, well, completion, deemed completed of your work, just take that and apply it to the course of construction endorsement, that's not how policy interpretation in Florida works. If there's no special quotation marks, you just go to the general dictionary definition. And so that's what the district court judge did correctly. He looked at the course of construction conclusion, or endorsement, and it says, in very plain language, what it means. Project includes, but it's not limited to, buildings. A single project is what was, it was actually the JM family renovation project is what was insured under this policy. And that was the coverage that they were provided and that they purchased. Now the issue of whether or not they got a good deal, or whether they could have gotten something better, that's not really even the issue before the court. And that was one of the issues that we raised in our brief, is that under Florida law, you're bound by a contract that you agree to. And they were bound to read this. And if, you know, your honor, we did highlight and cite to a case where there was another course of construction endorsement used in another policy that probably would have met their needs perfectly. And those are available on the marketplace. And the onus is on them, Kauffman, when you're getting these and your broker's reviewing it, you're reviewing it with your broker, your attorneys, your risk manager, whoever, to make sure that you get the coverage that's going to fit the needs for your particular project. That's really not the issue before the court. So there's been a lot of peripheral issues. There's been a lot of smoke and mirrors. And what this case is really about... You can't mean, they may not be right, but you can't blame them for trying to look to some definition of completion within the policy when there's nothing else. And by the way, again, although you may be right and the district court may have been right, it's in the definition section. The title's an endorsement, but it's in the definition section. So your normal instinct in reading is that that applies across the board to everything in the policy. So that may not work at the end of the day, but it's not crazy. It's not crazy because it's the only time that completed or completion gets defined within the policy itself. Well, actually, it's really not even... Completed is not defined in the... What it is is deemed completed. Your work in special quotations will be deemed completed. And your work is not the equivalent of the project. And that would take you... The difference is the project. Yes. And the named insureds in this policy are actually... That's also another endorsement, which defines a named insured to include each enrolled contractor who performs work on a part of the project. The signing of a written contract or agreement by a named insured for work that is part of the project designated in this policy. So again, that takes you back to what it was insured here was the JM Family Renovation Project. The course of construction endorsement was meant to exclude any property damage that incurred during the course of construction to the project. That was the purpose of that endorsement, which was provided to them and which they agreed to. May I direct your attention to the reformation issue? I think the district court's just flat wrong about saying there's no standing. I mean, I've looked back at insurance policy, law, and treatises, contract treatises, going back to the 19th century through the 20th century. You can seek a reformation of a written instrument because of mutual mistake because it doesn't reflect the agreement of the parties without waiting for there to be an underlying dispute. In fact, lots of jurisdictions, Florida has definitively resolved this, but for lots of jurisdictions, and it looks like Florida's probably the same, the claim accrues on execution of the contract, not there being some underlying dispute. There's a Florida case from an appellate court where the reformation of a life insurance policy occurs before the death of the policyholder, which must mean that you don't have to wait for an underlying dispute. What do you say about that? Your Honor, I first focused on what you said about mutual mistake. It was our position. There was a lot of discovery. That's a different question. This claim may fail, but to knock it out on standing seems to me clear error. Well, I believe that the court considered it was not ripe and it was too speculative. If the written instrument doesn't reflect the agreement of the parties, and in many jurisdictions you have to, the statute of limitations is running as a result. You have a ripe controversy, don't you? Go back to what they pled in their counterclaim for reformation. All they were seeking to do was to have the designated project endorsement go back and match the so-called application for insurance. Right. That's a different question. That's a question about whether the claim fails on the merits, not whether it's ripe or whether they're standing. To determine that that is not a justiciable claim seems to me wrong. It's a jurisdictional determination. We don't have a live dispute. If the argument is, hey, that written agreement does not reflect what I'm paying premiums for, then I think we've got a live dispute. It may fail on the merits, but that's a different question. Well, I think that there might be a close call, Your Honor, but I think that the time for them to really make their record that they did have a justiciable issue was in the district court, and I don't think they did. They say the agreement doesn't reflect, the written instrument doesn't reflect the agreement. We're paying premiums for this. Why isn't that enough? Well, I mean, you still have to have sufficiently pled allegations, and that was always our position. The point here is that if indeed they were right, that the contract did not reflect the true meeting of the minds of these parties about what was insured and how, and therefore they wanted the district court to rewrite the contract, to reform it, to properly reflect the meeting of the minds about some other understanding. If he were to do that, then they would, the issue of damages would look very different. But whatever it is that was wrong here, it isn't because they didn't allege harm. The problem is, it seems to me, what you're really arguing is on the merits, if you're right about the first argument on the first issue about it's a singular project and it wasn't completed and they agreed, et cetera, then the answer is it truly reflected the meeting of the minds and there's no reason to reform it. But if he's right that it didn't truly reflect the meeting of the minds and the court would actually reform it, well, that's a very big deal to somebody who sustained 3 million bucks in damages. Your Honor, going back to what you said about harm, there was no harm here. Even if you change the policy exactly to what they said in their application, that's not what happened here. Wait a minute. But if they're paying for premiums for coverage that the written instrument would not provide, even if they haven't suffered damage for anything for which they're claiming a loss presently because there's no coverage for that particular loss, they nevertheless, by paying premiums for coverage that the written instrument does not provide, they have suffered damage. Well, that also doesn't take into account that this policy included a minimum premium endorsement which meant that Kauffman would not get a refund if there was any change whatsoever in the project. I don't understand that answer. It has nothing to do with their claim for reformation. I thought it was undisputed in this record that certain aspects of the project, and let's assume you're right about project and what project means and it's singular and all that, that certain aspects of the project were not included in the face of the policy. Am I wrong about that? You're not wrong, Your Honor, but those were subsequently never even constructed. I understand, but that's the Chief's point. The Chief's point is that you don't need a claim on the policy to seek reformation. I ask you for coverage for two cars. I want my two cars covered, my wife's car and my car, right? You give me the policy and we agree that the policy is going to cost me X amount a year for the two cars. I get the policy. Six months in, I finally read it. I figure out that you insured my wife's car, but you haven't insured my car. Can I reform? I haven't had an accident. I'll tell you the answer. I haven't. You know his answer. I'm asking for your answer. Can I reform? Can I seek to reform? In that particular case, potentially, but, Your Honor, I guess what I would- It doesn't matter that if he also has submitted a claim for a scooter accident that wouldn't be covered under the policy anyway. That somehow affects his right to reformation or to seek reformation to reflect his car as well as his wife's. But even if this court reversed the reformation order and said it shouldn't have been dismissed and go back for further adjudication, that doesn't- Well, I don't know that we're even saying that. No, but- The judge may have been right. He just had the wrong reason. Right. Right. Perhaps summary judgment ought to have been entered anyway to make the two rulings perfectly consistent. But it would not prevent this court from affirming the final summary judgment on-   Yes. What we have here is not a merits determination, but a jurisdictional determination. Yes. What the district court has done is said that there's no standing to seek this. It hasn't even gone through the summary judgment standard. Which would mean it has no preclusive effect. Other than a statute of limitations, they could come back again. Correct. But Your Honor could still- What I would have thought you'd be arguing is he's right even if he had the nomenclature wrong. Even if you had to do it on the merits, summary judgment ought to be entered here. It was a singular project. It wasn't completed. This is what they bargained for. Therefore, we're not entitled to a reformation because the document reflected the true will of the parties in the meeting of the minds. Isn't that right? That is correct. I mean, you should have ... The court can absolutely affirm the declaratory judgment summary judgment without fail, without question. That's exactly what we're seeking that you do is that you affirm the final summary judgment granted to my client on the declaratory judgment. Did you request affirmance on an alternative ground that has reached the merits and reject the reformation claim on the merits? Did you ask for that relief in your brief? I don't believe we did, Your Honor. Do you have to? I don't believe we have to. I think it's- I would have thought that a court- You can affirm based on any basis found in the record. It makes it a little bit more difficult when we now, assuming we think that they're standing, we now have to go back and figure out what the party's arguments were, should have been, could have been, and construct a summary judgment record of ourselves without the assistance of the parties. It just makes it harder. It looks to me like even if the plaintiff is wrong about the claims for coverage that you say were excluded, I say they're excluded. Okay? I agree with you about that. That does not necessarily mean, from my reading of this record, that there wasn't, notwithstanding that, a mistake, possibly, in the written instrument that should be reformed. It could be a separate claim that is independent of that. You see that point? I see that point, Your Honor. Isn't that also a reading of this record that bars us from saying, well, he put the wrong nomenclature on it? Because I don't think that impacts your ability to affirm the summary judgment granted on the declaratory judgment complaint. Right, but why isn't the wisest way to proceed here if, indeed, there is no- This is a justiciable claim to simply say, you decided it erroneously. Go back and redo it. Your Honors, I don't think that- Rather, you're suggesting we ought to do it ourselves, but in your brief, you didn't offer this as sort of an alternative way to proceed. That was the point Judge Jordan was making. I guess our position would be that you could affirm based on any basis- We can. Yes. That was the position that we took.  Yes. I see I'm out of time. Thank you, Your Honor. Thank you. Mr. Podolak, tell me this. Let's say you're wrong about coverage, okay? Let's say they're right about the exclusion as to the claims that you actually did submit. Would you nevertheless have a claim for affirmation because the written instrument still does not reflect what you're paying premiums for, and if so, why? Yes, because ultimately, and I will defer more fully to the briefs on the subject, but ultimately because there is standing in that Kauffman has suffered harm in a number of different ways, not the least of which is the claim that's before the court, but in form of ongoing exposure that still potentially exists and the fact that we have a contract that doesn't reflect the party's terms. In what way? In what way? In what way does the contract not reflect the agreement of the parties? That this would provide for a specific phased approach to the construction work that was being performed. I thought the answer would have been that there were certain aspects of the project, even deemed singular, that were not included in the description because the person who wrote the policy admitted she made a mistake. I thought that, that's what I thought too. You know what? That was the answer, Your Honor. All right, that if you go back, if there's a claim later on the policy and it involves those two pieces of the project, the response may be, you got no coverage because that's not part of the description, but it really was when you told Liberty, here's what the project consists of. It consists of these seven things and now you only have five and you don't have the last two. That's right. So you at least have, I think, a claim for reformation. I don't know if it'll succeed in the end, but you can go forward on it, it seems. And I think that's right and I think it would not be inappropriate given the court's guidance here that one of the potential outcomes is that this is sent back to the district court with that instruction and then ultimately with further instruction for summary judgment proceedings to proceed on that basis with the correct terms. Now on the coverage issue, there were just a couple of points that I would like to highlight for the court. The judge prior your commentary on the singular use of the term project and the definition of completion is appreciated. What I will say is as we go back to the base form of the policy, we have a definition and I think Judge Jordan, your comments about the products completed operations hazard being the nomenclature and it really being a stand in for the concept of completion is well founded. That's exactly what it is. And as the amici have gone through in detail, it is that carefully manicured definition of completion and it is carefully manicured on purpose to reflect the subtleties and nuances of construction work that has existed for nearly 40 years. The amici also say that what the insurance industry is doing is sort of pulling the wool over everybody's eyes with the CCIP policies because what they give you on the one hand they're taking away with the other. And so you buy a combined policy that's supposed to provide you some builder's risk coverage and some commercial liability coverage after completion. And then when you get the policy through the exclusion, it turns out you got no builder's risk coverage at all. So it's only post-completion that you're covered. So they think that it's a scam that the insurance company is or this insurance company is running. Well, there are also cuts against you on the merits that this endorsement very clearly tried to say you don't get what is normally thought of as builder's risk coverage because nothing gets covered until the project gets completed. Well, I think there is an overreach there, and I think that's certainly been a theme of their position. But I want to take you from that definition of completion that's provided in the base form of the policy that has, again, I'm going to repeat, been around for 40 years and Liberty is well familiar with. And the question then becomes, when they get to issuing this endorsement, which on their forms has only existed for nine years, and they provide language that says, we're not going to apply this insurance to any project insured under this policy during the completion during the course of construction until the project is completed. And they know well that the product's completed operations hazard supplies that definition. It's done that for 40 years. It's been litigated up and down as opposed to exclusions of this nature. Is it really their intent to deviate by not providing an alternative definition? When they say further in the endorsement expressly, all terms and conditions of the policy remain unchanged. And they go further to provide supplemental definitions for construction and for project. It's incumbent on them, especially since this is an exclusion, which is subject to a heightened scrutiny, heightened burden of scrutiny on them to be unmistakably clear that if they're going to supply a new definition of completion, they've got to say it. And the problem with supplying Merriam-Webster's dictionary or Britannica dictionary definitions is now there is no track record. And Judge Jordan, I think you're concerned about there being no precedent for exclusions of this nature. This is going to be the first one. It already is. And I probably will be seeing you. I see I've run out of time. I'd like to just briefly conclude my comments. Why not? Why not? I was on a roll. We're going with our time. Yeah. It's very likely Ms. Rooney and I will be back in front of you in a couple of years having a debate about- Isn't that the beauty of precedent? Well, you know- We can develop it one case at a time. But we may be having a debate about what it means using the definition supplied by the district court. All we can do is decide the case we have. Mr. Podolak, we have your case. We understand your position. And we are adjourned for the week. Thank you, Your Honors.